UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-cv-22254-DPG

CARMEN RINCON and CARLOS RINCON,
as Personal Representatives of the Estate of
Ethan Rincon, deceased

    Plaintiff,

v.


MIAMI-DADE COUNTY, a subdivision
of the State of Florida, SERGEANT VICTOR EVANS,
individually and in his official capacity
as a police officer for Miami Dade County,
OFFICER JOHN DALTON, individually and in his official capacity
as a police officer for Miami Dade County, and
OFFICER BRIAN ZAMORSKI, individually and in his official capacity
as a police officer for Miami Dade County, and OFFICER
MARLENE TABORDA, individually and in her official capacity
as a police officer for Miami Dade County,

    Defendants.
_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

CARMEN RINCON and CARLOS RINCON, as Personal Representatives of the Estate of Ethan Rincon, deceased (collectively "Plaintiff"), sue Defendants, Miami-Dade County ("MDC"), Sergeant Victor Evans ("Evans"), Officer John Dalton ("Dalton"), Officer Brian Zamorski ("Zamorski") and Officer Marlene Taborda ("Taborda") (hereinafter referred to collectively as "MDC Police" or "MDC Officers"), independently, jointly and severally, and allege:

1

### A. NATURE OF CASE

1. This action arises out of the wrongful death of Ethan Rincon ("Ethan") by and through CARMEN RINCON and CARLOS RINCON, as the Personal Representatives of his estate, on behalf of the estate and his statutory survivors.

2. This action alleges violations of civil rights and other state and federal laws which resulted in Ethan's death on March 22, 2016 in Palmetto Bay, Miami-Dade County, Florida, located in the Southern District of Florida.

3. The claims are brought pursuant to Title 42 U.S.C. § 1983 under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

4. The suit generally alleges that the Defendants acted illegally, improperly and negligently in by and through the acts and/or omissions of MDC, its police department, its police officers and supervisors.

5. Defendants, without legal cause or excuse, caused an unreasonable confrontation with Ethan, and then punished him excessively by killing him, violating his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

6. These violations were committed as a result of the deliberate indifference to the policies, customs and practices of the Defendant MDC through its police department.

### B. JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to Title 28 U.S.C. § 1331 and § 1343(a)(3). This Court has supplemental/ancillary jurisdiction pursuant to Title 28 U.S.C. § 1367 with respect to state law claims the Plaintiff may bring as they derive from the common nucleus of facts, and because the claims are interrelated and should be tried in a single judicial proceeding under the concepts of judicial economy, convenience and fairness.

8. Pursuant to Title 28 U.S.C. § 1391, venue in the United States District Court for the Southern District of Florida is proper because this is the judicial district in which Ethan resided when alive and where the Defendants reside and operate. Last, Ethan's death was caused in and occurred in Miami Dade County. Further, as stated in Paragraph 2 above, all events or omissions giving rise to Plaintiff's claims occurred in this district.

9. Plaintiff anticipates amplifying this complaint with state tort claims as soon as the Florida pre-suit statute of repose period expires. Plaintiff has already complied with the notice mandated by Florida Statute 768.286(6)(a).[1]

**C. PARTIES**

10. At the time of his death at the hands of the MDC Officers, Ethan was a United States citizen residing in Miami-Dade County, Florida.

11. Plaintiff - CARMEN RINCON and CARLOS RINCON as the Personal Representatives of the Estate of Ethan Rincon - pursuant to the laws of the state of Florida are authorized by law to bring this action.

12. The Defendant MDC is located in Miami-Dade County, Florida, and is responsible, through its police officers, employees, servants and agents, for enforcing the ordinances of the Defendant MDC, as well as the laws of the state of Florida, through its police department. It is also responsible for ensuring that its officers, employees, servants and agents are properly hired, properly trained and obey the laws of the state of Florida and of the United States. The Defendant MDC is also responsible to ensure that its police officers follow proper established and written protocol and procedures.

---

[1] Plaintiff reserves the right to seek leave to amend this complaint to add ancillary state tort claims upon expiration of the response period.

3

13. MDC Officer Victor Evans, at all times relevant to this complaint, was a duly appointed uniformed police officer of the Defendant MDC, acting under color of law, employed by and serving under the Defendant MDC. He was, therefore, also an employee of the Defendant MDC.

14. MDC Officer John Dalton, at all times relevant to this complaint, was a duly appointed uniformed police officer of the Defendant MDC, acting under color of law, employed by and serving under the Defendant MDC. He was, therefore, also an employee of the Defendant MDC.

15. MDC Officer Brian Zamorski, at all times relevant to this complaint, was a duly appointed uniformed police officer of the Defendant MDC, acting under color of law, employed by and serving under the Defendant MDC. He was, therefore, also an employee of the Defendant MDC.

16. MDC Officer Marlene Taborda, at all times relevant to this complaint, was a duly appointed uniformed police officer of the Defendant MDC, acting under color of law, employed by and serving under the Defendant MDC.  She was, therefore, also an employee of the Defendant MDC.

D.  **ALLEGATIONS OF FACT**

a.  **The Vandalism Report and Police Dispatch**

17. On or about March 22, 2016, Ethan was alone and inside his home located in Miami-Dade County, Florida (the "home").

18. MDC Police were called regarding a vandalism occurring at that the time at or near the home and were given a description of the suspect.

19. MDC Officers arrived at the home. They began investigating the reported call. They contacted the complainant and started looking for the person who matched the description of the vandalism suspect.

20. Around that time, Ethan's mother arrived after receiving a call from a neighbor who described the event to her saying she thought Ethan was the person who had caused the vandalism.[2]

21. Shortly thereafter, Ethan's father arrived at the home.

22. Ethan's mother told the police that her son was home in his room and was alone. She emphatically and repeatedly advised them that he suffered from Asperger's Syndrome.

    b. **Police Protocol for "Barricaded Subjects"**

23. At this point in time, the MDC Police had a specific amount of information. **One**, they knew - or highly suspected - that Ethan *had committed* the vandalism. **Two,** they knew - or highly suspected - that Ethan was inside the house. **Three**, they knew that the house belonged to his parents and that neither parent had any firearms or explosives therein because both parents were on the scene. **Four**, they knew that because they had the house surrounded, Ethan was not a danger of escaping and/or of harming others. **Last,** since there was absolute silence within the home, the MDC Officers had no reason to believe that Ethan was then a danger even to himself. Thus, there were three possibilities. Ethan was either awake, asleep or dead. In *any* of those scenarios however, he was not exhibiting a clear and present threat to himself or others. *The vandalism was over*. It was property damage. The "victims" were his own parents who likely would never want to press charges. The property damaged was

---

[2] Ethan's mother sought legal advice and counsel to assist her in getting Ethan immediate psychological help, even if, need be, on an involuntary basis.

5

covered by insurance. All of this equates to one truthful conclusion; that there were no exigent circumstances to enter the residence and shoot and kill Ethan.

24. Accordingly, none of the circumstances that presented at the time justified an immediate entry to conduct a routine arrest.

25. The scenario should have been treated as one of a barricaded *subject with mental health issues*. Florida law enforcement officers receive very specific training in how to handle individuals suffering from mental health conditions in a variety of different scenarios, including a hold-up in a barricaded location. The MDC Police did not make any efforts to follow this training and protocol. (See Exhibit A)

26. The MDC Police did not make any attempts to communicate with Ethan or utilize the presence of his mother or father to convince him to exit the home.

27. The MDC Police did not allow the father to attempt to sway his son into exiting the home to speak to the police.

28. The MDC Police did not call for a trained negotiator.

29. Both parents advised the MDC Police that there were no firearms in the residence.

30. Both parents begged the MDC Police to allow them to go inside to convince Ethan to come out of the home to meet the police. The MDC Police would not listen.

31. The MDC Officers did not call a SWAT team which is especially trained to make high-risk entries into residences where a barricaded or locked up suspect is believed to be hiding.

32. SWAT teams have not only specific training for these types of operations, but they also have significant modern day resources and techniques they implement so that a resort to violence, particularly the discharge of a firearm, is unnecessary or, only a last resort.

33. For example, SWAT teams have bullet proof shields they can use in making an entry. They have optics and robotics they can use. Water and power supplies can be cut off to the residence to essentially turn the stand-off into a safe waiting game. One technique commonly used is to merely breach the front door so the suspect knows he/she is now vulnerable. In short, the list goes on and on as to what alternative measures exist before going into a house with guns blazing. And those are all consistent with proper police protocol and procedure.

34. Defendant MDC and the MDC Officers further violated such protocol by not waiting for a high level supervisor to arrive on the scene to take command and make sure this matter was handled appropriately. Rather, they impatiently and boldly forced their entry into the home, confronted and then shot and killed Ethan.

35. While the MDC Police, through the media, have stated that the shooting was in self-defense alleging that Ethan wielded a pick ax at them, other than their self-serving uncorroborated statements, there is as of yet, no forensic evidence which supports that defense. In fact, a preliminary on-scene investigation highly suggests that such claim simply would have been impossible. In any event, even if that *were true*, Ethan's death resulted from a premature, ill-advised decision to break protocol in the first place.

36. Ethan was shot suddenly without justification and without provocation. No taser was used as an alternative. Rather, he was shot multiple times in the chest.

### E. CUSTOMS, POLICIES AND PRACTICES

37. While the MDC Police Department has many outstanding officers, at times, the MDC Police Department has exercised customs, policies and practices resulting in the deprivation of constitutional rights of Miami- Dade County citizens on several occasions with not only excessive use of force claims but also the use of force resulting in unnecessary death.

38. In *Calderon v. JD Patterson and Others*, 13-20169-cv-Moreno. Calderon, a 25 year old male with no prior criminal history, was approached by MDPD Officers and asked if he had any weapons. Calderon admitted he had a knife and in a slow and non-threatening manner displayed the knife which was in a sheath that he was carrying. MDPD Officer Schottenheimer approached from behind another officer who did not draw his/her weapon, and fired at Calderon once. Officer Schottenheimer then fired three more rounds into Calderon's back. The victim had turned around as a result of the first round which had struck Calderon in the front of his body.  This unjustified shooting and killing occurred in 2011.

39. In *Barnes v. Miami Dade Police Department*, 13-20778-cv-Lenard, MDPD Officers approached Barnes, who was walking peacefully in public with a friend. MDPD Officers, in an unmarked vehicle, raced to their location scaring Barnes and his friend. Both attempted to run away out of fear. The MDPD Officers did not identify themselves, drew their weapons and one of them shot the plaintiff in the leg. Although Barnes was disabled, an Officer fired a second round into plaintiff's left side without justification. This unjustified shooting took place on or about 2012.

40. In *Soto v. Miami Dade County*, 14-21307-cv-KMW, Soto appeared at the Miami Dade County Building Code Compliance Office to appear for a Board of Rules and Appeals meeting. An argument ensued between Soto and a county official. Two plain clothes MDPD

Officers ordered Soto to leave the building. The officers followed Soto into the elevator and once therein, began to beat Soto, ripping his shirt and causing him to bleed. The officers then placed Soto in a patrol car with the windows rolled up and no ventilation and left it parked in the direct sunlight. They drove to a private location and spoke to an individual who would not allow Soto to see his/her face. That conversation lasted about an hour while Soto remained "baking" within the police car. The MDPD Officers then drove to a gas station for no known reason. Ultimately, Soto passed out.

41. In *The Estate of Federico Osorio v. Miami Dade County*, 16-cv-20713, the plaintiff alleged that on March 4, 2014, two MDPD Officers shot and killed Federico Osorio in his own home, after being informed by his mother, Martha Fajardo, that her son had a history of mental illness. Osorio was home alone and committing no crime at the time of the shooting. Similarly, Plaintiff Rincon was home alone, committing no crimes.

42. In *Cordoves v. Miami Dade County*, Case 14-20114-CMA, the plaintiff alleged that on November 14, 2010, the plaintiff, who suffered from Post-traumatic Stress Syndrome, severe panic disorder, and recurrent major depression, was walking peacefully at a mall with her federally licensed service dog. Mall security personnel objected to her entering into a store, stating that no pets were allowed. The plaintiff objected and an argument ensued. MDPD Officer Pompee was summoned and arrived. Pompee aggressively arrested the plaintiff, placing her in a bear hug and lifting her off the floor. The police officer roughly and unjustifiably manhandled the plaintiff, slamming her up against a glass pane on the side of the store. The officer was given notice that he was dealing with a mentally handicapped individual. The officer squeezed the plaintiff so hard that she stopped breathing. The officer mocked her claiming that she was faking her condition. Fire rescue was called and a

defibrillator was used. The plaintiff was taken to the Emergency Room at Baptist Memorial Hospital, Miami, Florida, where she was treated and later released.

43. In *Martinez v. MDC*, 12-23534-cv-PAS, the plaintiffs alleged that on October 3, 2010, the plaintiffs were at a restaurant where two MDPD officers were working off-duty details. The plaintiffs argued and MDPD Officers Huerta and Fleitas intervened. The officers physically attacked one of the plaintiffs – Gustavo Martinez – and then placed him under arrest. The arrest report describes the incident in a manner consistent with justification for the use of force and probable cause for the arrest. Unfortunately for MDC and Officers Huerta and Fleitas, a video of the entire episode was recorded by a mall surveillance camera. The video totally contradicted the sworn testimony of the Officers' arrest affidavit. Neither Officer Huerta nor Fleitas was disciplined or terminated for the event or for their perjury.

44. In *Robertson v. MDC,* 13-24926, the plaintiffs, owners of Vanessa's Café, claimed that on April 23, 2010, they were closing their restaurant at the time that several MDPD officers entered claiming they were investigating a robbery suspect which they believed to be on the premises. When the plaintiffs assured the Officers that the suspect was not there, Officer Ramirez verbally abused one of the plaintiffs. The officer struck the plaintiff with a closed fist, sending the 56 year old man to the ground. Other officers grabbed 58 year old Vanessa Robertson (who suffered from symptoms of a stroke) by the throat and threw her into one of the restaurant booths. The officers subsequently continued to assault both plaintiffs. Despite the Officers bringing charges for battery on law enforcement officers against the plaintiffs, the State Attorney's office dismissed all criminal charges against the plaintiffs.

## F. DAMAGES AND ATTORNEY'S FEES (FOR APPLICABLE CLAIMS)

45. Although this complaint does not yet include state tort claims, the Plaintiff has already initiated the requisite/statutory pre-suit notice to the Defendant MDC and intends to seek leave of court in the future to amend this complaint.  Plaintiff gives notice that pursuant to Florida's Wrongful Death Act, Fla. Stats. §768.17 et seq., the Survivors of Rincon and Personal Representative will be entitled to recover the following damages, suffered as the result of Ethan's death:

    a. Future loss of support and services from the date of death reduced to present value;

    b. The value of loss of support and services from the date of decedent's injuries to his death with interest and future loss of support and services from the date of death and reduced to present value;

    c. Their mental pain and suffering from the date of injuries;

    d. Medical and/or funeral expenses due to the decedent's injuries or death may be recovered by the survivor(s) who paid them; and

46. As the decedent's Personal Representatives, CARMEN RINCON and CARLOS RINCON, may recover for the decedent's estate the following:

    a. The loss of prospective net accumulations beyond death reduced to present value.

    b. Medical or funeral expenses due to the decedent's injuries or death that have become a charge against the Estate or that were paid by or on behalf of decedent.

47. In their claims pursuant to Title 42 U.S.C. Sec. 1983, Plaintiff is entitled to recover the damages listed in paragraph 36 and in addition, Plaintiff is entitled to recover the following damages:

    a. The Estate of Ethan Rincon, by and through CARMEN RINCON and CARLOS RINCON, Personal Representatives, is entitled to recover hedonic damages suffered by the decedent. In other words, the value determined by the trier of fact, of Ethan Rincon's past and future loss of enjoyment of their lives.

    b. The survivors of Ethan Rincon are entitled to recover damages suffered for the deprivation without due process of their constitutionally protected liberty interests in their relationship with Ethan as guaranteed by the Fourteenth Amendment, and state law as incorporated into Title 42 U.S.C . Sec. 1983.

48. Plaintiff has retained legal counsel in this matter and is obligated to pay counsel reasonable fees for their services.

49. As to all claims made pursuant to Title 42 U.S.C. Sec. 1983, Plaintiff shall be entitled to an award of attorney's fees pursuant to Title 42 U.S.C. Sec. 1988, in the event they prevail in any one or more of those claims.

**COUNT I - TITLE 42 U.S.C. §1983 – WRONGFUL DEATH RESULTING FROM EXCESSIVE USE OF FORCE AGAINST ETHAN (AS TO MDC OFFICERS)**

Plaintiff realleges Paragraphs 1 through 49 and further states.

50. On or about March 22, 2016, MDC Officers were acting under color of state law as members of Defendant, MDC's Police Department. They subjected Ethan to the deprivation of rights and privileges secured to him by the Constitution of the United States, including the constitutional rights to not be deprived of his life and liberty, due process of law, the constitutional right to be free from the use of excessive force against his person and to be free from unlawful searches and seizures, under the Fourth, and Fourteenth Amendments to the United States Constitution and the right against cruel and unusual punishment under the Eight Amendment of the United States Constitution.

51. On March 22, 2016, MDC Officers acting in the course and scope of their duties with MDC, prematurely engaged in an unnecessarily dangerous confrontation with Ethan inside his home, who, at the time was neither a threat to himself nor others.

52. MDC Officers violated protocol with no reason to believe that there was any clear and present danger posed to anyone since Ethan was home alone and the police were aware of that.

53. The MDC Officers failed to wait for SWAT backup.

54. Ethan Rincon did not take any action that objectively or subjectively could have been perceived as posing any threat to the safety of MDC Officers or others.

55. The MDC Officers then threatened to arrest Ethan's parents for obstruction of justice if they would not give them the key to open the front door of the home.

56. The MDC Officers did not have the consent of either parent to enter into the home.

57. Without legal justification, the MDC Officers forcibly entered the home. Rather than attempt to convince Ethan to come out so he could be arrested and subjected to a fair trial, MDC Officers indiscriminately hunted him down and suddenly opened fire on Ethan.

58. The MDC Officers used excessive, unreasonable and unnecessarily dangerous levels of force not reasonably necessary to accomplish the purpose of the moment. Their decision and actions were in contravention of accepted law enforcement standards relating to the entry of a structure, relating to dealing with a person suffering from a severe mental health problem, and relating to the use of force in gaining control over a person subject to arrest. This was a routine felony arrest.

59. The shooting death of Ethan by MDC Officers was in violation of clearly established constitutional law under the Eighth and Fourteenth Amendments to the Constitution,

guaranteeing the right to be free from cruel and unusual punishment and the right to due process.

60. The MDC Officers are not entitled to qualified immunity since no reasonable police officer acting under these circumstances would have entered the residence nor used the level of force used on Ethan.

61. CARMEN RINCON and CARLOS RINCON, as the Personal Representatives of the Estate of Ethan Rincon, claim damages for the wrongful death of Ethan. Said damages include loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, and for funeral and burial expenses under Title 42 U.S.C. §1983 and the Florida Wrongful Death Statute.

WHEREFORE, the Plaintiff demands compensatory and punitive damages against Defendant MDC Officers, attorney's fees, costs and trial by jury for all issues so triable by right.

### COUNT II - TITLE 42 U.S.C. §1983 - WRONGFUL DEATH RESULTING FROM EXCESSIVE USE OF FORCE AGAINST ETHAN (AS TO DEFENDANT MDC)

Plaintiff realleges Paragraphs 1 through 49 and further alleges:

62. At all times material hereto, the Defendant MDC, as represented by the acts of its employees, permitted and tolerated and caused a pattern of practice of unjustified, unreasonable and illegal arrests and use of excessive force against members of the public, the mishandling of in-custody arrestees, and the cover-up of misconduct, including lying and perjury, by police officers of the Defendant MDC.  Although such acts were improper, officers involved were not prosecuted and/or disciplined, and/or subjected to retraining, and some of said incidents were in fact covered up with official claims that their acts were justified and proper.  As a result, MDC, including Defendant MDC Officers, were caused and encouraged to believe that the members of the public could be subjected to unlawful

arrests, illegal use of force, the mishandling of members of the public after their arrest, cover-ups, obstruction of justice, lying and perjury, and that said improper or illegal conduct would, in fact, be permitted by the Defendant MDC.

63. Defendant MDC, through its police officers, maintained a custom of using excessive force, making unlawful arrests and detentions and mishandling and/or mistreating arrestees, as well as cover-ups, lying, perjury and obstruction of justice.

64. The cited conduct represents a pattern in which citizens were abused, injured, endangered or killed by the sometimes negligent and other times intentional and/or reckless misconduct of the Defendant MDC's police officers and/or that serious incompetence or misbehavior was widespread throughout the Defendant MDC's Police Department.

65. Defendant MDC has maintained a system of review of incidents of abuse of lawful authority such as, illegal or excessive use of force and unlawful detentions, and/or arrests, among other things, as well as the mishandling of in-custody arrestees by police officers, and complaints thereof, cover-ups by its police department of police misconduct, lying, perjury and obstruction of justice by several police officers, a tolerance for untruthfulness by its police officers which has failed to identify the unlawful use of force and/or seizures by to appropriate discipline, and/or supervision, and/or retraining, to the extent that it has become the de facto policy and custom of the Defendant MDC to tolerate such acts by its police officers.

66. Defendant MDC through its police department, has maintained a long-standing, widespread history of failure to properly hire, and/or train, and/or supervise and/or discipline its police officers for, among other things, illegal use of force, unlawful arrests, misconduct in dealing with in-custody arrestees, cover-ups by its police department of police misconduct, a

15

tolerance for untruthfulness by its police officers, even though it had notice of this unlawful conduct by its employees.

67. The foregoing acts, practices, omissions, policies or customs of the Defendant MDC caused police officers, including Defendant MDC Officers, to believe that acts such as improper use of force and unlawful seizures, arrests, excessive use of force, cover-ups of police misconduct, a tolerance for untruthfulness by its police officers, among other things, would not be investigated or sanctioned, but instead would be tolerated, with the foreseeable result that Officers, including Defendant MDC Officer Evans were more likely to use excessive or improper force, cover-up police misconduct, make unlawful seizures and arrests.

68. Ethan has been a victim of said abuses of lawful authority, and said illegal acts were the direct result of the previously described acts, omissions, practices, polices or customs of the Defendant MDC.

69. As a direct and proximate result of the acts described above, in violation of the United States Constitution, CARMEN RINCON and CARLOS RINCON as the Personal Representatives of the Estate of Ethan Rincon, claim damages for the wrongful death of Ethan Rincon, and for all of the constitutional violations alleged herein.

WHEREFORE, the Plaintiff demands compensatory damages against Defendant MDC, and MDC Officers, attorney's fees, costs and trial by jury for all issues so triable by right.

Dated this 19th day of July, 2016.

    Respectfully submitted,


    By: /s/ Richard Diaz

    _____

    Richard J. Diaz, Esq.
    Richard J. Diaz, P.A.
    F.B.N. 0767697
    3127 Ponce de Leon Blvd.
    Coral Gables, FL  33134
    Telephone: (305) 444-7181
    Facsimile: (305) 444-8178
    Email: rick@rjdpa.com


    By: /s/ Roberto Pertierra

    _____

    Roberto Pertierra, Esq.
    Roberto E. Pertierra, P.A.
    F.B.N. 616370
    2655 S. Le Jeune Road, Suite 1105
    Coral Gables, FL  33134
    Telephone: (305) 444-0011
    Facsimile: (305) 441-2122
    Email: pertierrapa@gmail.com


    By: /s/ Rene A. Sotorrio

    _____

    Rene A. Sotorrio, Esq.
    The Law Offices of Rene A. Sotorrio, P.A.
    F.B.N. 226734
    312 Minorca Ave.
    Coral Gables, FL  33134
    Telephone: (305) 444-5565
    Facsimile: (305) 444-8588
    Email: rene@sotorriolaw.com