VII. **HOSTAGE SITUATIONS AND BARRICADED SUBJECTS:**

A. **Purpose:**

To establish procedures applicable to situations involving hostages being held by armed or barricaded subjects threatening harm to themselves or others. These procedures are intended to provide guidelines by which such situations may be brought to the desired conclusion without inquiries and with a minimum of confusion and disruption of normal operations.

B. **Policy:**

The ultimate desired conclusion in a hostage or barricaded subject situation is the safe release of the innocent and the arrest of the subject without death or injury to anyone. It is the Department's policy to use constructive negotiations in conjunction with tactical advantage to successfully terminate the situation.

C. **General:**

In hostage or barricaded subject situations, appropriate response is required to contain the situation and to establish communication with the subject. Control of responding officers must be established to facilitate deployment and to avoid confusion which could result in reckless action by the subject.

Criminals who use hostages to effect their escape are desperate individuals who, if allowed to escape, will pose a continuing threat to the hostage and to the public at large. Assurance that a hostage will be released unharmed is a meaningless promise. The Department does not have the ability to protect a hostage who is removed from the presence of officers. Although protection of innocent persons is of great importance, officers shall not act as substitutes for a hostage. The safety of hostages can be best assured by keeping them in the presence of officers and by preventing their removal. However, officers should realize that exceptional situations could arise where considered judgment might dictate otherwise.

Individual initiative must not be stifled to the point that appropriate reaction would not be forthcoming in the event of an overt action by the subject. In a hostage recovery situation, good judgment dictates that a tactical plan be developed to ensure successful termination of the situation rather than making a direct immediate attempt to apprehend the subject. The passage of time should benefit the Department's objective as its entire resource can be utilized toward developing the tactical plan.

D. **Tactical Ploy:**

A barricaded person poses a danger to officers who seek to arrest him, as well as others present. Good judgment dictates that a tactical plan be developed rather than arbitrarily rushing the subject.

Officers should seal avenues of escape and call for assistance. {CALEA 46.1.4f} Once the subject is isolated, time is to the benefit of the officers. To minimize the possibility of injury to officers and others, appropriate special equipment and personnel should be requested as needed. An effort should be made to contact the subject to persuade him to surrender. {CALEA 46.1.4a}

E. **Supervision at Scene of Barricaded Suspect:**

When a suspect is located as the result of a follow-up investigation, the senior investigative officer at the scene is in command. In situations which develop from radio calls or spontaneous activities, the senior uniformed officer present is in command. {CALEA 46.1.4i}

F. **Guidelines for Utilization of Special Response Team (SRT):** {CALEA 46.1.4b}

1. Supervisors must be aware of the magnitude of an incident for which the SRT is utilized. As a consequence of a request for SRT, numerous personnel are contacted to respond and are thus unavailable for other functions.

    Due to the number of personnel and associated resources involved, these guidelines will be complied with by supervisors requesting assistance from SRT.

2. SRT responds to the following situations:

**EXHIBIT A**

  a. Barricaded Subjects: Not all subjects who refuse to surrender should be considered barricaded. A barricaded subject is defined within the following limited criteria:

   (1) The subject is probably armed; and

   (2) The subject is believed to have been involved in a specified criminal act or is a significant specified threat to the lives of citizens and/or police; and

   (3) The subject is in a position of advantage affording cover and concealment or is contained in an open area and the presence or approach of police officers could precipitate an adverse reaction by the subject; and

   (4) The subject refuses to surrender.

  b. Hostage Situations: The same criteria as for barricaded subjects applies with the addition of a person(s) being held by the subject against his will.

  c. Suicide Situations: Instances where suicidal/mentally deranged subjects are armed and have specified intent to harm themselves.

  d. Sniper Situations: Situations where it is determined that a sniper subject is isolated and not mobile.

  e. Mobile Field Force (MFF) Support: Those instances when the MFF Commander has articulable reason to believe the MFF may encounter sniper fire.

  f. High Risk Search and Arrest Warrants Service: When the affected entity supervisor (normally a Lieutenant or higher rank) has articulable reason to believe that armed subjects will be encountered.

  g. Special Operations: The use of SRT with units involved in unique investigative activities, such as Reverse Stings, Drug Interdiction, Multi-Agency Task Forces, etc., will be considered on a case-by-case basis.

  h. Dignitary Protection: As directed by the Assistant Director, Police Services.

  i. Major Aircraft Disaster.

  j. Aircraft, boat, bus, train or Metrorail hijack situations.

**G. Action:**

1. When a hostage or barricaded subject situation exists, the first officer on the scene will:

  a. Notify the CB and request that his immediate supervisor respond to the scene.

  b. Request assistance of the type and numbers he believes to be immediately necessary and, if appropriate, a safe route for responding units and deployment points should be given. {CALEA 46.1.4d}

  c. Identify and preserve evidence and the crime scene when practicable.

  d. Establish a CP if needed. {CALEA 46.1.4i}

2. The first supervisor to arrive at the scene will initiate appropriate action to confirm that a hostage is being held or that a subject is barricaded and determine the nature and seriousness of the offense being committed. Based upon information provided, a decision will be made if SRT is required. If confirmed and unresolved, establish or assume responsibility for a CP, if appropriate. Request platoon commander respond to the scene.

3. The supervisor-in-charge will:

   a. Deploy responding units so as to contain the situation most effectively. Suspects will be contained and isolated in the smallest area possible. This area will be designated as the "inner perimeter". {CALEA 46.1.4f}  An outer perimeter will be established in order to provide a secured area for command operations and to protect spectators or the general public from becoming involved in the inner perimeter. Outer perimeter personnel will be responsible for pursuit of persons/vehicles fleeing outside of the inner perimeter, surveillance units if utilized, and control of travel routes. {CALEA 46.1.4f,n}

   b. Evacuate civilian personnel from the immediate area. {CALEA 46.1.4g}

   c. Determine available means to communicate with the subject and if possible, establish contact to determine the reason for his action.

   d. Request SRT and negotiator personnel through the Communications Bureau Shift Commander. {CALEA 46.1.4b}

   e. Attempt to identify persons familiar with the subject and information concerning the building or structure.

   f. Persons familiar with the subject should not be allowed to communicate with the subject without approval of a supervisor from SRT.

   g. Designate response area for backup units, fire equipment, ambulance, and news media. {CALEA 46.1.4h,j,k}

   h. Request assistance from county/private agencies: {CALEA 46.1.4j}

      (1) Fire Rescue to stand by.

      (2) Private ambulances for injured: {CALEA 46.1.4h}

      (3) Fire engine company if chemical agents used.

4. SRT Personnel:

   a. The SRT Commander or Tactical Operations Section (TOS) Lieutenant will:

      (1) Respond to all call-outs for SRT tactical and/or negotiator personnel.

      (2) Coordinate with the supervisor-in-charge and confirm tactical solution.

      (3) Have the authority for all decisions related to the resolution of the incident once SRT assumes control of the inner perimeter. {CALEA 46.1.4i}

   b. The Squad Team Leader will:

      (1) Supervise SRT personnel until the SRT Commander or TOS Lieutenant assumes command.

      (2) Determine type of equipment necessary.

      (3) Identify location of the offender.

      (4) Stage and deploy team personnel.

   c. The Negotiator will:{CALEA 46.1.4c,m}

      (1) Report to the SRT Commander or TOS Lieutenant.

(2) Determine number of offenders and hostages, demands and motivations of offenders, and any other information useful to a resolution of the incident.

5. The use of chemical agents may be incorporated into a tactical plan devised by the Squad Team Leader and approved by the SRT Commander or TOS Lieutenant. The Squad Team Leader has the authority to authorize use on tactical operations. Such usage will be properly documented. The use of deadly force will be consistent with Florida Statutes Section 776.05 and MDPD Policy. {CALEA 46.1.4l}

6. Seek release of hostages and surrender of the offender. The CP will monitor any frequencies being used by support unit.

7. Regular police service calls connected with the emergency will be dispatched by the CB on the appropriate channel.

## VIII. CORRECTIONAL INSTITUTION DISORDER PLAN:

### A. Purpose:

To establish procedures and areas of responsibility in the event of a disorder at any correctional institution within Miami-Dade County (Annex P). {CALEA 46.1.2}

### B. General:

If rioting, fighting, or general disorders occur in any correctional institution within Miami-Dade County, the MDPD may be requested to assist. When Federal institutions are involved, MDPD personnel may only provide assistance outside the complex; e.g., perimeter security and searches. The following three levels of disorder may be expected involving inmate clientele:

1. Level I: Rioting, fighting, or general disorder which can be quelled by internal force of the affected institution.

2. Level II: Rioting, fighting, or general disorder which can be quelled by internal forces of the institution, but requires supplementary assistance from MDPD.

3. Level III: Rioting, fighting, or general disorder with escape possibilities that are beyond the control of institution personnel which culminates in a request for MDPD to restore order at the incident site.

### C. Emergency Procedure:

1. Notification of the Communications Bureau Shift Commander: In the event of a Level II or Level III disorder, institutional personnel will notify the Communications Bureau Shift Commander (per institutes internal standard operating procedure).

2. Upon notification, the Communications Bureau Shift Commander will:

   a. Notify concerned uniformed platoon commander as to affected institution and level of occurrence.

   b. Notify municipality and request available units to respond when a county facility located within a municipality is involved.

   c. Notify the Staff Duty Officer.

3. The Uniformed Platoon Commander will:

   a. Contact correctional institution personnel and verify the following:

      (1) Level/nature of disturbance.