UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-cv-22254-DPG

**CARMEN & CARLOS RINCON,**
    *Plaintiffs*,
**v.**

**MIAMI-DADE COUNTY,** *et al.***,**
    *Defendants*.
_____/

**PLAINTIFFS' RESPONSE TO MIAMI-DADE COUNTY'S
MOTION TO DISMISS**

    **COME NOW,** the Plaintiffs, Carmen and Carlos Rincon, by and through their undersigned counsel and hereby file his Response in Opposition to the Motion to Dismiss [DE 69] (the "Motion" or "Mot.") filed by Defendant Miami-Dade County (the "County"), and state:

**I.**    **Introduction and Background**

    1.    On March 22, 2016, County police officers (the "Officers") entered a private residence and unjustifiably shot and killed Ethan Rincon, the Plaintiffs' son, who suffered from Asperger's Syndrome and who was home alone and not committing any crime. The Officers entered the Rincon home without a warrant, consent, or exigent circumstances and in cold blood killed Ethan, notwithstanding his parents' pleas to be allowed to go into their own home to speak to their son and convince him to come outside to talk to the Officers. The Officers never made any attempt to communicate with Ethan. Instead, they simply executed him. After the execution, the Officers conspired to make the killing seem justified.

    2.    Ethan's parents, as Personal Representatives of Ethan's Estate, filed suit [DE 1] on June 17, 2016, naming as Defendants the Village of Palmetto Bay (the "Village"); the Officers involved in the shooting and cover-up: Marlene Taborda, who remained outside the Rincon home

and prevented Ethan's parents from entering; and the Officers who stormed the house and killed Ethan: Sergeant Victor Evans, Officer John Dalton, and Officer Brian Zamorski.  The Plaintiffs brought claims for wrongful death under 42 U.S.C. § 1983 against the Officers and the Village and for negligence and negligent failure to train against the Village.  (Compl. [DE 1].)  On June 24, 2016, the Plaintiffs filed an Amended Complaint [DE 9], making only stylistic changes by correcting typographical and grammatical errors.  A Second Amended Complaint [DE 11] followed on July 19, 2016.  The Second Amended Complaint substituted in for the Village the County, which provided police services to the Village and employed the Officers.  (2d Am. Compl. [DE 11].)  The Second Amended Complaint specifically stated an intention and reserved the right to bring additional ancillary state-tort claims upon the expiration of the pre-suit period of repose imposed by Florida law on actions against municipalities.  (*Id.* ¶ 9 n.1.)

3. The County moved [DEs 14 & 16] to stay proceedings pending resolution of state criminal and administrative investigations.  The Rincons opposed [DE 17].  The Court entered an Order [DE 25] staying the case on August 26, 2016.  The Plaintiffs moved [DE 26] for reconsideration of the stay, which the Court denied [DE 29].  The action remained stayed until December 6, 2018.  (Order Lifting Stay [DE 50].)  On January 14, 2019, the Plaintiffs filed their Third Amended Complaint [DE 59].  Against the County, the Third Amended Complaint brings claims for violation of the Americans with Disabilities Act (the "ADA") in Count I and for excessive force/wrongful death under 42 U.S.C. § 1983 in Count III.  (3d Am. Compl. [DE 59].)  On February 5, 2019, the County moved to dismiss the Third Amended Complaint for failure to state a claim.  (Mot. [DE 69].)  The County's Motion is the *first* Motion to Dismiss brought by *any* Defendant.  The Plaintiffs now respond in opposition to the County's Motion.

## II.     Standard of Decision

4.      Rule 8 requires a short and plain statement showing that the claimant is entitled to relief.  Fed. R. Civ. P. 8.  A complaint must contain sufficient factual allegations to present a plausible claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  When deciding a motion to dismiss, a court must take as true all well-pleaded allegations in the complaint and view them and all reasonable inferences in the light most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570).  Pleadings must be construed liberally, "so as to do justice."  Fed. R. Civ. P. 8(e).  A complaint "survives a motion to dismiss 'even if it strikes a savvy judge that actual proof… is improbable[] and that recovery is very remote and unlikely.'"  *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1326 (S.D. Fla. 2012) (quoting *Twombly*, 550 U.S. at 556).  "'A motion to dismiss is granted only when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010) (quoting *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)).  The County has failed to shoulder its burden.

5.      The County argues that the Court should disregard any allegations premised "upon information and belief."  (Mot. [DE 69] at 4 (citing *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013).)  The authority to which the County cites, however, does not so hold.  The Eleventh Circuit in *Mann* simply reinforced the general principle that allegations—including those based on information and belief—must contain sufficient facts to make the statements plausible, relying on the Supreme Court's opinion in *Twombly*.  713 F.3d at 1315 (citing *Twombly*, 550 U.S. at 551, 557).

6. Additionally, the County seeks dismissal with prejudice. (Mot. [DE 69] at 3.) The County's only argument for dismissal with prejudice is that the operative complaint is the Third Amended Complaint and, therefore, the fourth iteration of a complaint. (*Id.*) The County cites no authority to support a dismissal with prejudice here. No prior complaints faced a motion to dismiss. The instant Motion is, indeed, the first test of any iteration of a complaint in this action. The number of amendments is not the touchstone for dismissal with prejudice. Leave to amend should be granted freely in the interests of justice. Fed. R. Civ. P. 15(a)(2); *126th Ave. Landfill, Inc. v. Pinellas County*, 459 F. App'x 896, 897 n.1 (11th Cir. 2012). Leave to amend is "particularly appropriate" upon a finding of failure to state a claim. *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983) (citing *Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir. 1977)). A court should grant leave to amend when the plaintiff's underlying facts may be a proper subject of relief. *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014). Thus, to the extent that the Court might find any of the County's arguments persuasive, any dismissal should be without prejudice to amend. As the County's Motion is the first challenge to the sufficiency of a complaint herein, it cannot be said that the Plaintiffs repeatedly have failed to cure noted deficiencies through prior amendments; a dismissal with prejudice would be an abuse of discretion. *See Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001).

**III.   Count I: Violation of the Americans with Disabilities Act**

    A.   <u>Essential Eligibility Requirements</u>

7. Ethan Rincon lived with a recognized disability and, in the days before the Officers killed him, had suffered mental or psychological distress. (3d Am. Compl. [DE 59] ¶¶ 17, 22-23.) The Officers knew this. (*Id.* ¶¶ 22, 24-25.) Nonetheless and in the absence of any emergency, danger, or ongoing criminal activity, the Officers refused to evaluate potential mental-health

concerns regarding their activities at the Rincon home, refused to pursue alternative means of achieving their desired objectives at the Rincon home, refused otherwise to de-escalate, and, instead, stormed the house and opened fire on Ethan. (*Id.* ¶¶ 86-90.) To state a claim under Title II of the ADA, one must allege (1) that he is an individual with a qualifying disability, (2) against whom a public entity discriminated, (3) on the basis of the disability. *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (citing 42 U.S.C. § 12132)).

8. The County argues that the Plaintiffs insufficiently have alleged that Ethan was a qualified individual with a disability. (Mot. [DE 69] at 5.) The ADA defines a qualified individual with a disability as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices,… or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). According to the County, the Plaintiffs have not alleged that Ethan met the essential eligibility requirements for participation in programs provided by the County. (Mot. [DE 69] at 5 (curiously ignoring the statutory language relating to receipt of services).) The County's argument is disingenuous.

9. What are the essential eligibility requirements for being shot in cold blood by the police in one's own home? The County has pointed to none. There appears to be no circuit precedent addressing the issue. Instead, the County relies on an affirmance of a grant of summary judgment in a case involving a prisoner who was rejected from a work-release program because he was unable to work. (*Id.* (citing *Flournoy v. Culver*, 534 F. App'x 848 (11th Cir. 2013).)) In *Bircoll*, a profoundly deaf motorist (Bircoll) sued the County, claiming officers violated the ADA during an arrest. 480 F.3d at 1075. Bircoll's complaint contains no allegations of meeting essential

eligibility requirements for being arrested. *See* Compl., *Bircoll*, No. 1:05-cv-20954-FAM (S.D. Fla. Apr. 8, 2005), ECF No. 1. The County answered Bircoll's complaint, but did not assert, via motion to dismiss or affirmative defense, any failure regarding essential eligibility requirements. Answer & Affirmative Defenses (S.D. Fla. May 20, 2005), ECF No. 15. The County moved for summary judgment but did not dispute that Bircoll was a qualified individual with a disability— thus necessarily not disputing that Bircoll met any essential eligibility requirements. Motion for Summary Judgment (S.D. Fla. Oct. 18, 2005), ECF No. 50 at 3 n.4. While the County cannot be held to a position it took in an unrelated case, *Bircoll* would suggest that there are no essential eligibility requirements for involuntary interactions with police.

10.     Out-of-circuit precedent has addressed meeting essential eligibility requirements in the context of involuntary police interaction. The Eighth Circuit rejected the notion that Title II applies only with respect to services or programs voluntarily sought. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998); s*ee also Haberle v. Troxell*, 885 F.3d 170, 180-81 (3d Cir. 2018) (ADA applies during arrests). Core police activities are services provided by public entities. *Gorman*, 152 F.3d at 912-13 (citing *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998) (holding that state prisons and prison services are subject to Title II)). Participation in benefits and services may be voluntary or involuntary. *Id.* at 912. It is error to conclude that a disabled arrestee is not a qualified individual with a disability who meets essential eligibility requirements for the receipt of services. *Id.* at 912-13. Similarly, investigative questioning by police is a program, service, or activity covered by the ADA. *E.g., Calloway v. Boro of Goldsboro Dep't of Police*, 89 F. Supp. 2d 543, 554-55 (D.N.J. 2000). There is no reason why the type of police action at issue here should not be treated similarly. "[L]aw enforcement officers who are acting in an investigative or

custodial capacity are performing 'services, programs, or activities' within the scope of Title II." *Williams v. City of N.Y.*, 121 F. Supp. 3d 354, 368 (S.D.N.Y. 2015).

      B.      Compensatory Damages for Violations of the ADA

      11.      The County argues that the Plaintiffs' claim for compensatory damages for violations of the ADA fails on its face. (Mot. [DE 69] at 5-7.) To bring a claim for compensatory relief to address violations of the ADA, a plaintiff must show that a defendant violated rights under the statute and did so with discriminatory intent. (*Id.* at 5 (citing *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014).) According to the County, the Plaintiffs have not identified any rights and have not alleged sufficiently discriminatory intent. (*Id.* at 5-7.)

      12.      Title II of the ADA prohibits discrimination based on disability by public entities: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). The Third Amended Complaint alleges that, prior to storming the house and executing Ethan, the Officers refused to avail themselves of offered information regarding Ethan's condition (3d Am. Compl. [DE 59] ¶ 23-25); the Officers made no attempt to communicate with Ethan and refused to permit Ethan's parents to attempt to communicate with him (*id.* ¶ 28); the Officers did not call, as they should have, for a trained negotiator (*id.* ¶ 30); the Officers refused to introduce into the Rincon home a robotic device rather than invade the home with weapons drawn (*id.* ¶ 31); the Officers refused to call a SWAT team (*id.* ¶ 32); the Officers refused or failed to implement a Conflict Intervention Team training program to evaluate and de-escalate the situation (*id.* ¶¶ 86-89). All of

these actions were reasonable modifications to policies, practices, or procedures that the Officers could have, but did not, make.

13. Discriminatory intent may be established by showing that the defendant acted with deliberate indifference to statutory rights. *McCullum*, 768 F.3d at 1147 (citing *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012)). "To establish deliberate indifference, a plaintiff must show that the defendant '*knew* that harm to a federally protected right was substantially likely' and '*failed* to act on that likelihood." *Id.* (citing *Liese*, 701 F.3d at 344 (quotation marks omitted) (emphasis in original). Here, the Plaintiffs allege that the Officers were aware of Ethan's Asperger's Syndrome and mental health difficulties—because Ethan's parents told the Officers about them and begged the Officers to speak with an attorney who had knowledge of the issues—and nonetheless failed to act on that knowledge when they invaded the Rincon home and killed Ethan. (3d Am. Compl. [DE 59] ¶¶ 23-25, 86-90.) For purposes of deciding the County's Motion to Dismiss, the Court must credit such factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 570).

14. The County complains that the Plaintiffs have not identified any official with actual knowledge of discrimination and the authority to address it. (Mot. [DE 69] at 6-7.) Of course, that is not true. The Plaintiffs allege that the Officers at the scene had knowledge of the discrimination—Ethan's parents told them about Ethan's condition and the Officers all had or should have had training in handling such situations. (3d Am. Compl. [DE 59] ¶¶ 23-25, 86-90.) Each of the Officers had the authority to address the likelihood of discrimination because each could have chosen not to participate in the invasion of the Rincon home and cold-blooded killing of Ethan.

## IV. Count III: Section 1983 Municipal Liability

15. Municipalities may be held liable for civil-rights violations under section 1983 when an official policy or governmental custom causes the deprivation at issue. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Whether based on official policy or unofficial custom, for liability to attach, the policy or custom must be the "'moving force behind the constitutional deprivation.'" *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (internal quotation and citation omitted)). "The Supreme Court has defined… 'custom' to include 'persistent and wide-spread… practice…' and 'deeply embedded traditional ways of carrying out policy.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

16. The County asserts that the Plaintiffs insufficiently have alleged a pattern or practice of constitutional violations on the part of the County such as would support liability under section 1983. (Mot. [DE 69] at 9-19.) According to the County, the Plaintiffs fail to meet the necessary benchmarks of culpability and causation. (*Id.* at 19.) The County groups its arguments into four main thrusts. First, the County contends that the Third Amended Complaint contains mere legal conclusions and conclusory allegations, which must be disregarded. (*Id.* at 9-11.) Second, the County complains that the Plaintiffs improperly seek to rely on incidents that post-date Ethan's killing to establish a pattern or practice. (*Id.* at 11-12.) Third, the County asserts that the incidents that the Plaintiffs cite that occurred prior to Ethan's killing are immaterial. (*Id.* at 13-18.) Fourth, the County contends that the plethora of excessive-force complaints against Evans, Dalton, and Zamorski simply do not matter. (*Id.* at 18-19).

### A. Incidents After the Officers Killed Ethan

17. Taking the arguments slightly out of turn, the Plaintiffs agree that they may not rely on any incidents that took place after the Officers stormed the Rincon residence and in cold blood executed Ethan to establish a custom, pattern, or practice to support municipal liability on the part of the County. The Court should thus disregard for purposes of evaluating allegations of a custom, pattern, or practice the allegations in paragraphs 66 through 69. Those allegations are included in the Third Amended Complaint simply to convey that the pattern existing at the time Ethan was killed remains ongoing.

18. As to the incident described in paragraph 64, however, the County simply suggests that the incident lacks similarity with Ethan's killing and groups it with the incidents that took place after Ethan was killed. (Mot. [DE 69] at 12.) Count III is not premised on Ethan's disability status. Instead, Count II seeks to impose liability on the County based on its custom, pattern, or practice of permitting or encouraging the use by police of excessive force. (*See* 3d Am. Compl. [DE 59] ¶¶ 106-114.) Paragraph 64 recounts a prior example of the custom, pattern, or practice of County police using excessive force; whether the victim of the use of excessive force was a person with a disability is irrelevant. Contrary to the County's assertion, there are similarities between the incident described in paragraph 64 and Ethan's killing: in both cases, police indiscriminately opened fire within seconds of encountering the subject; Ethan never presented a danger to the Officers and the car Montesano had driven was immobile when shots were fired; neither Ethan nor Montesano and Valdes were armed; both incidents show a disregard for or lack of training.

### B. The Plaintiffs' Allegations Are More Than Conclusions

19. The County describes the allegations of the Third Amended Complaint as "nothing but a diatribe of conclusory allegations and legal conclusions littered with references to the

elements of a municipal liability claim. (Mot. [DE 69] at 10.) In fact, the Third Amended Complaint presents a detailed and factually rich basis for the Plaintiffs' claims. To the extent that there are conclusions in the Third Amended Complaint, they summarize and explain the factual averments. While the County may feel the need histrionically to exhort the Court to "clear away this distracting underbrush," the Plaintiffs—whose disabled son was executed in their family home by County police—have every faith and confidence in the Court's ability properly to read a complaint and decide a motion to dismiss.

### C. The Prior Incidents Cited Are Relevant

20. The County argues that the seven incidents of County police using excessive force between 2012 and 2016 on which the Plaintiffs rely must be disregarded as conclusory because the Plaintiffs do not allege their personal knowledge of the events. (Mot. [DE 69] at 13.) The County's position is both preposterous and absurd. The requirement of personal knowledge the County seeks to impose would preclude virtually all imaginable *Monell*-type claims because it is highly unlikely that any plaintiff would have personally witnessed prior events. The County's reliance on *Prosper v. Martin* is misplaced as *Prosper* does not support the County's position. In *Prosper*, the court did not reject allegations about prior incidents showing custom. Instead, the Court rejected a personal representative's allegations about the very shooting forming the basis of the complaint because she failed to establish how she knew the events described (regarding the use of force against her decedent). No. 17-cv-20323-CMA, 2018 WL 3084062, at *2-*3 (S.D. Fla. June 21, 2018). *Prosper* is wholly silent as to prior incidents. *Id.*

21. The County also finds fault in what it calls "regurgitations of unproven allegations" from pleadings filed in lawsuits arising from the incidents on which the Plaintiffs rely. (Mot. [DE 69] at 13.) Of course, at the motion-to-dismiss stage, allegations need not be proven; they simply

are allegations.  The County has pointed to no authority that requires allegations in a complaint to have been proven formally at the time the allegations are made.  In any number of cases, a jury ultimately may find allegations to lack proof, but that in no way suggests that the allegations did not state a claim for purposes of withstanding a motion to dismiss.  That there may be discrepancies between the allegations the Rincons make here and allegations contained in pleadings in other, unrelated cases likewise is of no moment.  At this stage, a court must accept as true the Plaintiffs' factual allegations.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 570).

22. Somewhat incredulously, the County also argues that the Plaintiffs cannot rely on prior instances if the litigation from those instances ended favorably to the County.  (Mot. [DE 69] at 14-15.)  However, the County's own words betray the fallacy of its argument: the County states that, in one of those cases, *Soto v. Miami-Dade County*, No. 14-cv-21307-KMW, Judge Williams dismissed the complaint <u>as a sanction for the plaintiff's violation of court orders</u>.  281 F. Supp. 3d 1320, 1321-22, 1324 (S.D. Fla. 2017).  Thus, no merits determination was made; the dismissal was instead a sanction for failing repeatedly to comply with court orders.  *Id.*  Such a determination does not—indeed, could not—say anything whatsoever about the facts giving rise to the litigation.  There was no finding that the conduct complained of did not occur.  The County's suggestion otherwise is nothing short of mendacity.

23. Similarly, the County points to Judge Scola's dismissal of *Estate of Osorio v. Miami-Dade County*, No. 16-cv-20200-RNS.  (Mot. [DE 69] at 15.)  The County admits: Judge Scola dismissed for failure to state a claim.  (*Id.* (citing, e.g., 191 F. Supp. 3d 1366 (S.D. Fla. 2016).)  That much is true.  However, a dismissal for failure to state a claim does not pass on the underlying events; it merely indicates that the plaintiff in the case failed adequately to allege facts to state a claim.

24. The County's reliance on Judge Altonaga granting summary judgment in favor of the County in *Cordoves v. Miami-Dade County*, No. 14-cv-20114-CMA, fares no better. (*See* Mot. [DE 69] at 15.) The Plaintiffs do not dispute that the court granted the County's motion for summary judgment. However, all that means is that, in that litigation, the plaintiff failed to put forth evidence to support her claims. *See* 92 F. Supp. 3d 1221, 1239 (S.D. Fla. 2015). Moreover, the summary judgment in *Cordoves* in favor of the County was <u>not on</u> a section 1983 claim because the section 1983 claim in *Cordoves* was against <u>the officer</u>, not the County. *Id.* at 1234-38. Cordoves sought damages from the County under a theory of vicarious liability for a state-law assault and battery claim. *Id.* at 1238. Given that the County was a party to the litigation, its misrepresentations to this Court are shocking.

25. Next the County faults six of the seven prior instances on which the Plaintiffs rely as being factually dissimilar to the facts giving rise to the instant litigation—namely, County police storming a private residence without a warrant, without consent, and without exigent circumstances to execute a disabled resident inside the home. (*See* Mot. [DE 69] at 15-16.) The County's argument seeks to lash the section 1983 claim too tightly to the ADA claim. In the section 1983 claim, the Plaintiffs do not seek redress for the County's refusal to modify procedures in light of Ethan's disability; they seek damages for the use of excessive force when County police killed their son. The County heightens the requirement of past similar incidents to show a custom, pattern, or practice into one requiring exactly the same circumstances. No case law creates such a strict standard.

26. Initially, it should be noted that the opinion on which the County relies, *Mercado v. City of Orlando*, did not concern a motion to dismiss; instead, *Mercado* was an appeal from summary judgment. 407 F.3d 1152, 1154 (11th Cir. 2005). That the standard applicable to a

motion for summary judgment is different from the standard of decision cannot seriously be contested. Moreover, *Mercado* does not call for the exact identity of circumstances the County urges the Court to require. The plaintiff in *Mercado* received in discovery a list of all cases involving excessive force by Orlando police. *Id.* Mercado could not point to any instances of substantially similar circumstances. Notwithstanding the County's strenuous denial, a different field of factual allegations is before this Court.

     27.    In 2011, County police fired multiple shots at someone who posed no threat; no officer was disciplined. (3d Am. Compl. [DE 59] ¶ 57.) In 2012, County police rushed a person walking peacefully in public and opened fire, including after striking a disabling shot; no officer was disciplined. (*Id.* ¶ 58.) County police, ignoring their training and official protocols, beat someone in a County office and then left him locked in a hot vehicle; no officer was disciplined. (*Id.* ¶ 59.) In 2014, County police shot and killed a man who was alone in his own home and committing no crime, notwithstanding having been told by his mother that he had a history of mental illness; no officer was disciplined. (*Id.* ¶ 60.) Again ignoring their training and official protocols, in 2010, County police, with knowledge that she suffered mental or emotional disabilities, roughly handled a woman to the point that she required hospital treatment; no officer was disciplined. (*Id.* ¶ 61.) In 2010, County police falsified an arrest report to attempt to justify an attack, but the true events were depicted on videotape; no officer was disciplined. (*Id.* ¶ 62.) In 2010, County police assaulted an elderly pair without provocation or justification and sought *post hoc* to justify the attack; no officer was disciplined. (*Id.* ¶ 63.) In 2015, County police fired dozens of rounds at unarmed suspects without regard to fellow-officer or bystander safety; no officer was disciplined. (*Id.* ¶ 64.) All of these prior incidents show that there was a custom, pattern, or practice of the use of excessive force in unprovoked and unjustified attacks, ignoring

training and protocols, and false reporting to justify, with superior officers refusing to take remedial, corrective, or disciplinary action.

28. The County also argues that none of the prior incidents on which the Plaintiffs rely can establish a custom, pattern, or practice because none resulted in a finding that the officer's conduct was anything but legitimate. (Mot. [DE 69] at 17.) According to the County, to provide evidence of a custom, pattern, or practice, a prior incident "must have resulted in a finding that a ***constitutional violation*** occurred." (*Id.* (citing *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1329 n.21 (11th Cir. 2015).) The County misstates the law. Additionally, it is precisely the County's failure properly to investigate and make findings regarding incidents of the use of excessive force that is the custom, pattern, or practice at issue here.

29. Notwithstanding the County's misrepresentation, *Weiland* does not require any specific findings with respect to pleading allegations of prior incidents to establish a custom, pattern, or practice for section 1983 municipal liability. The County simply made that up. Nowhere in its discussion of section 1983 municipal liability does the *Weiland* court even mention the word "findings." 792 F.3d at 1328-30. What *Weiland* <u>does</u> require is what the Plaintiffs have provided: plausible allegations of prior conduct to establish a custom, pattern, or practice.

D. <u>Excessive Force Complaints Against Police Officers Matter</u>

30. The County's final argument is that the excessive force complaints filed against the Officers simply do not matter. (Mot. [DE 69] at 18-19.) The County's statement "[t]hat multiple complaints were lodged against the three officers here is of no consequence" (*id.* at 18) accurately distills the very problem that is the custom, pattern, or practice here: to the County, the use of excessive force by its police officers does not matter. The County asserts that none of the complaints the Rincons allege was meritorious and, therefore, none can inform the 12(b)(6)

analysis of the section 1983 claim against the County. (*Id.* at 18-19 (citing *Simmons v. Bradshaw*, 879 F.3d 1157, 1168 (11th Cir. 2018) & *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).) The cases the County points to do not, in fact, support the County's position.

31.     *Simmons* reviewed a jury verdict against a shooting officer and a grant of summary judgment in favor of a sheriff on a *Monell* claim. 879 F.3d at 1160. The *Simmons* trial court made <u>factual findings</u>, which this Court may not do on a motion to dismiss. *Id.* at 1168; *see also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 570) (when deciding a motion to dismiss, a court must accept as true the plaintiff's factual allegations and view all reasonable inferences that may be drawn from them in the light most favorable to the plaintiff). The Eleventh Circuit never held in *Simmons* that prior complaints must be meritorious; it merely stated that the district court, in granting summary judgment, found that there had never been a complaint—meritorious or otherwise—against the shooting officer in that case. 879 F.3d at 1168. The record at summary judgment did not support the plaintiff's allegations. *Id.* The County both misreads and misstates the law and ignores the procedural posture of the matter before the Court. *Simmons* concerned the adequacy of evidence brought to challenge a motion for summary judgment; it did not pass on the sufficiency of allegations to state a claim.

32.     *Brooks* was an appeal after a jury verdict. 813 F.2d at 1192. Again, the issue on which the Eleventh Circuit passed was not whether the plaintiff stated a claim. At trial, a key piece of evidence was ten citizen complaints filed against the officer whom the plaintiff accused of using excessive force, three of which were filed after the incident giving rise to the lawsuit. *Id.* What the Eleventh Circuit decided was that the defendant city had no notice of misconduct because, ***at trial***, the plaintiff failed to show that any of the prior complaints had merit. *Id.* at 1193. The city produced unrebutted evidence ***at trial*** showing that the prior complaints had been investigated

thoroughly and, thus, there was ***no trial evidence*** that the city knew or should have known that deficiencies in its policies or practices would lead to constitutional deprivations. *Id.* The Court here, in contrast, is faced with determining the **sufficiency of allegations**, not with deciding if evidence adduced at trial could support a jury verdict. The County once again has misrepresented precedent while failing or refusing to grasp the concept and significance of procedural posture.

**V.  Conclusion**

33. The County's Motion is due to be denied. The County has failed to meet its burden of showing that the Plaintiffs fail to state a claim. To the extent that the Court may agree with any of the County's arguments, the Plaintiffs should be given leave to amend.

**WHEREFORE,** in light of the foregoing, the Plaintiffs request that this Honorable Court enter an order denying Defendant Miami-Dade County's Motion to Dismiss [DE 69], along with all other relief the Court deems proper and just.

Dated March 8, 2019.

Respectfully submitted,
/s/ Domingo C. Rodriguez
Domingo C. Rodriguez, Esq. (FBN 394645)
domingo@rlomiami.com
RODRIGUEZ LAW OFFICE, LLC
95 Merrick Way, Suite 720
Coral Gables, FL 33134
Tel: 305-774-1477 ~ Fax: 305-774-1075

Richard J. Diaz, Esq. (FBN 767697)
rick@rjdpa.com
RICHARD J. DIAZ, P.A.
3127 Ponce de Leon Blvd.
Coral Gables, FL 33134
Tel: 305-444-7181 ~ Fax: 305-444-8178

Roberto E. Pertierra, Esq. (FBN 616370)
pertierrapa@gmail.com
ROBERTO E. PERTIERRA, P.A.
2655 S. LeJeune Rd., Suite 1105
Coral Gables, FL 33134
Tel: 305-444-0011 ~ Fax: 305-441-2122